UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**KIMBERLY ELLISON**,                                         :
                                                              :
                              Plaintiff,                      :
                                                              :       **MEMORANDUM DECISION AND**
                                                              :       **ORDER**
                – against –                                   :
                                                              :       21-CV-22 (AMD) (LB)
                                                              :
**THE STOP & SHOP SUPERMARKET**                               :
**COMPANY LLC**,                                              :
                                                              :
                              Defendant.                      :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On May 25, 2020, the plaintiff filed this negligence action in Kings County Supreme

Court. (ECF No. 1-2 at 4, 10.) On January 4, 2021, the defendant removed the action to federal

court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 at 3.)

Before the Court is the defendant's motion for summary judgment. (ECF No. 29.) For the

reasons explained below, the defendant's motion is granted.

## BACKGROUND[1]

At about 8:00 a.m. on September 24, 2019, the plaintiff and Michael Berry[2] took the bus

to the Stop & Shop on Cropsey Avenue in Brooklyn. (Pl. Dep. Tr. 20:6-22, 22:15-17.) The

plaintiff shopped at the store about once a month. (*Id.* at 21:4-11.)

---

[1] The plaintiff's 56.1 statement does not comply with Local Rule 56.1(b). Instead of responding to the
defendant's 56.1 statement, as required by the rule, the plaintiff submitted her own statement of facts, to
which the defendant then responded. (ECF Nos. 33-2; 35.) The Court resolved disputes in the
statements by examining the deposition transcripts, interrogatories and other documentary evidence.

[2] Michael Berry and the plaintiff have a daughter together, but were not in a romantic relationship in
September 2019. (Pl. Dep. Tr. at 22:1-11.)

Sometime between 10:00 a.m. and 12:00 p.m., while Mr. Berry was in a different part of the store, the plaintiff walked from the dairy aisle to the general merchandise area, which was brightly lit.  (Def. 56.1 ¶¶ 10-14.)  Nothing blocked her view, and no one else was in the area.  (*Id.* ¶¶ 13-15.)  When she got to the general merchandise area, she reached for something on a shelf and tried to turn around, but slipped and fell.  (*Id.* ¶¶ 21-22.)  Her right knee hit the ground first, followed by her left hand.  (Pl. Dep. Tr. 29:12-23.)

At that point, the plaintiff noticed for the first time "like a little small drop" of water on the floor; she said that there was "not much water," and that it might have been larger than a quarter.  (Pl. Dep. Tr. 31:1-9.)  The plaintiff also felt some water on the bottom of her pants.  (*Id.* at 32:5-7.)  She did not remember if she saw the source of the water, but she did not see water dripping from the ceiling.  (Def. 56.1 ¶¶ 25, 38.)

Mr. Berry responded to the plaintiff's call for help.[3]  (*Id.* ¶¶ 41-45.)  He noticed water on the floor and looked for its source.  He saw an air vent above the area where the plaintiff fell (*id.* ¶¶ 45-46), but did not see anything dripping from it.  (Berry Dep. Tr. 36:5-16.)  He also saw a yellow caution sign that was "standing on its side" (*id.* at 17:4-5); he first said that the sign was "nearby" the plaintiff (*id.* at 19:2-4), but after he looked at a photograph of the general merchandise area, he said that the sign was "not in the area" where the plaintiff fell.  (*Id.* at 41:11-18.)  Mr. Berry said that there were refrigerators ten feet from the plaintiff and sprinklers on the ceiling.  (*Id.* at 19:8-24.)

The plaintiff and Mr. Berry paid for the groceries, but did not tell the cashier or any other employee about the accident or that there was water on the floor, because the plaintiff did not

---

[3] Mr. Berry was not sure when the plaintiff fell.  At one point, he said that he and the plaintiff got to the store around 10:00 a.m., and that the plaintiff fell about 20 minutes later.  (Berry Dep. Tr. 15:8-10.)  Ultimately, when asked if he could state when the accident occurred, he testified "Actually, I can't."  (*Id.* at 15:11-13.)

want to be late for work.  (Pl. Dep. Tr. 33:11-20.)  Nor did the plaintiff ever file an incident report with Stop & Shop.  (*Id.* at 36:20-24.)  Because the plaintiff did not tell anyone at the store about her fall, the defendant did not prepare an incident report or look for video.  (Def. 56.1 ¶¶ 2-3.)  In fact, Stop & Shop was not alerted to the plaintiff's accident until she filed this lawsuit on May 25, 2020, about eight months after she fell.  (ECF No. 36 at 2.)[4]  On October 11, 2019, the plaintiff had MRIs of her right knee and left wrist.  (Pl. Interrog. ¶ 15.)  The knee MRI revealed that she had a torn meniscus, and the wrist MRI showed degenerative joint disease, synovial and capsular thickening, and tendinosis.  (*Id.*)  She had arthroscopic knee surgery about a year later on October 12, 2020 (*id.*), and wrist surgery on June 11, 2021.  (Pl. Dep. Tr. 42:19-43:8.)  Mr. Berry came back to the store on April 1, 2021, about a year and half after the plaintiff's fall, and photographed the area where the plaintiff fell.  (Def. 56.1 ¶ 53.)

DeShawn Johnson was a porter at Stop & Shop on September 24, 2019, the day the plaintiff fell.  (Johnson Dep. Tr. 60:20-25.)[5]  Mr. Johnson was responsible for keeping the store clean, including cleaning up spills.  (*Id.* at 22:8-16.)  He walked through the store every hour, which took between 20 and 25 minutes, using a "clean sweep" cart.  (*Id.* at 23:16-25, 26:22-27:3, 34:20-35:5.)  He logged the "clean sweeps" with a scanning gun, and scanned a bar code at the entrance of each aisle.[6]  (*Id.* at 24:12-25:14.)  The scanning system ensured that porters covered the entire store during their clean sweeps.  (*Id.* at 25:13-14.)

---

[4] The plaintiff sent a letter to Stop & Shop's landlord several weeks after the accident, but did not send a copy to Stop & Shop itself.  (ECF No. 26 at 3.)

[5] Mr. Johnson was fired in November 2019, but would say only that he was not fired for job performance.  (*Id.* at 92:9-20.)

[6] The only aisles that did not have barcodes were aisles that did not have breakable products, like cereal.  (*Id.* at 25:4-12.)

Whenever Mr. Johnson saw something wet or sticky on the floor, he cleaned the area with a mop, and then put two "wet floor" signs on either side of the spill to alert customers.  (*Id.* at 29:9-17, 35:6-13.)  He would check the area during his next clean sweep and remove the signs if the area had dried.  (*Id.*)  The frequency with which Mr. Johnson saw these kinds of hazards varied from once a week to twice a day.  (*Id.* at 29:18-30:6.)  Whenever he cleaned up a spill or other hazard during the hourly sweeps, he logged the event by hitting a "spill" button on the scanning gun.  (*Id.* at 30:7-31:19, 32:11-21.)  If he cleaned up a hazard outside the hourly sweep, he would not make a record of having done so.  (*Id.* at 30:20-31:4; *see also* Cantres Dep. Tr. 124:17-21 (porters logged only the hazards they found during their clean sweeps).)

Mr. Johnson remembered only one incident involving an injury to a customer, but it was not a slip and fall.  Rather, "somebody bumped into something" and fell.  He could not remember any time that a customer slipped and fell.  (*Id.* at 37:18-24, 38:15-25.)  Another time a pipe burst near the bakery section, but that was not where the plaintiff fell.  (*Id.* at 45:2-22.)

By the time he was deposed, Mr. Johnson did not remember September 24, 2019, but store records reflect that he did three clean sweeps that morning—the first at 9:40 a.m., the second at 10:30 a.m. and the third at 11:14 a.m.  (ECF No. 31-14 at 1-3.)  Mr. Johnson logged one "Refrigeration" hazard at 10:44 a.m. in the "Front End" of the store (*id.*), but thought that entry was wrong because there were no refrigerators in that area.  (Johnson Dep. Tr. 69:2-16.)  Mr. Johnson speculated that "either the gun had glitched or I might have made a mistake and maybe I hit a button I wasn't supposed to hit because those buttons are small and my hands are big."  (*Id.*)

Mr. Johnson estimated the gun malfunctioned 20 to 30 times in the two years that he worked at Stop & Shop (*id.* at 67:12-17); if the gun malfunctioned, he restarted it, which took several minutes. (*Id.* at 65:4-25.) These malfunctions did not erase any data. (*Id.*)

Carletta Cantres became the manager of the Stop & Shop in March of 2021 (Cantres Dep. Tr. 23:10-12), and did not hear that there were any leaks from the sprinklers, the air conditioning units or the refrigerators in the years before she started. (*Id.* at 153:14-154:6.) While she was the manager, two freezers outside of the general merchandise area required service (*id.* at 154:7-156:2), and the air conditioner in her office malfunctioned (*id.* at 86:21-87:8), but there were no problems with leaks. (*Id.* at 96:4-7, 97:20-23, 148:17-149:13.) Nor was she aware of defects in the store's flooring. (*Id.* at 99:14-100:16.)

From her review of the September 24, 2019 clean sweep records, Ms. Cantres determined that Mr. Johnson discovered and remedied a hazard in the "Front End" of the store at around 10:45 a.m. (*Id.* at 137:9-18.) She concluded from the reference to "Refrigeration" that the hazard "[w]ould have been water." (*Id.* at 138:9-15.) According to Ms. Canteres, the distance between the front end where the hazard was logged to the general merchandise area was "pretty far," "at least 40 feet or more[.]" (*Id.* 141:5-142:11.)

## LEGAL STANDARD

Summary judgment is appropriate if the parties' submissions—including pleadings, deposition transcripts, affidavits and other documents in the record—show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant has the burden of showing that there are no genuine disputes of material fact. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a factual dispute is "genuine" only if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252. Moreover, the nonmoving party must do more than point to "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). He must instead identify the "specific facts" that demonstrate a genuine issue for trial, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and "offer some hard evidence showing that its version of events is not wholly fanciful," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). If the nonmoving party's "evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Liberty Lobby*, 477 U.S. at 249-50 (citation omitted).

## DISCUSSION

### I.   Applicable Law

"It is well-settled that, in diversity cases, federal courts must look to the laws of the forum state to resolve issues regarding conflicts of law." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). In New York, "[i]f conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest

interest in regulating behavior within its borders." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994) (internal citation and quotation marks omitted).  Here, the plaintiff complains about acts that occurred in New York; the parties agree that New York law governs the plaintiff's negligence claim.  (ECF No. 30 at 2; ECF No 33-1 at 5.)

To establish a prima facie case of negligence under New York law, "a plaintiff must demonstrate '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'"  *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981) (citations omitted)).  "In order to show breach of a duty of care in a slip-and-fall case," *id.*, the plaintiff must demonstrate a genuine issue of material fact "that the defendant created the condition which caused the accident or that the defendant had actual or constructive notice of the condition,"  *Hatley v. Waldbaum, Inc.*, 69 A.D.3d 902, 903 (2d Dep't 2010) (citations omitted). To constitute constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Id.* (citations omitted).

While New York law governs the substantive negligence claim, the moving party's burden of proof on a summary judgment motion is procedural, and therefore governed by federal law.[7]  *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02-CV-4196, 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64, and its progeny, and accordingly is subject to federal rather than state law.")

---

[7] In claiming that the "defendants cannot proffer any evidence absolving Defendant of liability," the plaintiff applies the New York rather than federal standard for summary judgment.  (ECF No. 33 at 3.)

The "federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action." *Gisser v. Wal-Mart Stores E., LP*, No. 17-CV-5293, 2018 WL 6493101, at *3 (S.D.N.Y. Dec. 7, 2018). "Under New York law, [a] defendant who moves for summary judgment in a[sl]ip-and-fall case has the initial burden of making a *prima facie* showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it." *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (internal quotation marks and citations omitted). Under federal law, by contrast, the moving party "need not make any affirmative *prima facia* showing on this motion for summary judgment and may discharge its burden of proof merely by pointing to the absence of evidence to support an essential element of the [plaintiff's] claim." *Id.* (internal quotation marks and citations omitted).

## II.   Creation of the Condition

"Finding that the defendant created the dangerous condition requires 'some affirmative act' on the part of the defendant." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004). The plaintiff does not identify any evidence from which a jury could reasonably conclude the defendant did something to create the dangerous condition—the water—that caused the plaintiff to fall.[8] The undisputed facts are that the plaintiff reached for something on a shelf, that she fell, and then noticed a small amount of water on the floor, and that the bottom her pants were wet. (Def. 56.1 ¶¶ 21-25; Pl. Dep. Tr. 28:19-32:7.) There is no evidence about the source of the water or what caused it.

---

[8] It is not immediately apparent from the record that the water was even the cause of the plaintiff's fall. Nevertheless, I assume for the purposes of this analysis that it was.

Nevertheless, the plaintiff argues that there is circumstantial evidence from which a reasonable jury could find that the defendant created the risk.  (ECF No. 33-1 at 6-7.)  She cites her deposition testimony that she saw a sprinkler and an air vent over the area where she fell, and that she was near the dairy aisle, where there were refrigeration units.  (*Id.* at 4.)  But there is no evidence that the sprinkler or the air vent was leaking, or that refrigerator units, which were not near where the plaintiff fell, were malfunctioning.  (*See* Pl. Dep. Tr. 79:16-80:5; Berry Dep. Tr. 36:5-16.)

A plaintiff in a slip-and-fall negligence action cannot defeat summary judgment simply by listing possible sources of water when "it remains a mystery how the water ended up where it did."  *Dranoff v. Sam's E., Inc.*, No. 16-CV-6482, 2017 WL 1437207, at *4-5 (S.D.N.Y. Apr. 20, 2017) ("To the extent Plaintiff's argument is that Defendant created the condition simply by placing the flower bouquets on display in water, it fails."); *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998) ("The mere fact that the hotel supplied the coffee, however, does not establish the creation of the puddle, because, the puddle is not a direct consequence of the defendant's passive activity of providing guests with coffee."); *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009) ("[T]he mere presence of a self-service beverage station in the restaurant, by itself, does not tend to prove that defendant created the hazard."); *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220 (E.D.N.Y. 1998) ("The mere fact that a puddle of liquid originated from store merchandise does not establish the creation of the puddle, because, the puddle is not a direct consequence of the defendant's passive activity of providing merchandise for sale.").

*Olsen v. K Mart Corp.*, No. 04-CV-3648, 2005 WL 2989546, at *1 (E.D.N.Y. Nov. 8, 2005), in which the plaintiff tripped over a case of SpaghettiOs, does not compel a different

result.  Because the case was still wrapped in plastic, a jury could have found that the SpaghettiOs were not ready for sale, and that a store employee, not a customer, had put the box in the aisle.  *Id.* at 11-12.[9]  There is no similar inference that could be drawn in this case.  *Gatanas v. Picnic Garden B.B.O. Bufffet House*, 305 A.D.2d 457 (2d Dep't 2003) (summary judgment granted because plaintiff's assertion that water on the floor was spilled by a waitress refilling customer's glasses was "mere speculation"); *see also Dranoff,* 2017 WL 1437207, at *3 ("Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that a defendant created the condition through affirmative acts, a plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." (internal quotation marks and citation omitted)).

The plaintiff's reliance on Mr. Berry's testimony about the caution sign is similarly unavailing.  *White Castle*, 2009 WL 1955555, at *6 (granting summary judgment against plaintiff who observed a "folded up" yellow sign near where she slipped and fell).  First, the plaintiff did not see the sign at all.  (Pl. Dep. Tr. 32:22-25.)  Second, Mr. Berry testified the sign was "not in the area where [the plaintiff] fell."  (Berry Dep. Tr. 41:11-18.)  Finally, his testimony that the sign "wasn't standing up," and was "on the side" (Berry Dep. Tr. 18:22-25), suggests "that the sign was not actually in use."  *White Castle*, 2009 WL 1955555, at *6.  Indeed, "even if an employee had erected the sign to warn against some hazard, simply displaying such a sign is not probative of whether defendant created a puddle."  (*Id.*)

---

[9] The plaintiff also cites *Dillion v. Rockaway Beach Hosp.*, 285 N.Y. 176 (1940) and *Brito v. Manhattan & Bronx Surface Transit Operating Auth.*, 188 A.D.2d 253 (1st Dep't 1992), but neither was a slip-and-fall case, and the courts applied the New York rather than federal summary judgment standard.

### III.   Actual Notice

There is nothing in the record from which a jury could reasonably find that the defendant had actual notice that there was water in the area where the plaintiff fell.[10]  "Actual notice requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition. Defendants have actual notice of a defect if they created the condition or received reports of it such that they have actual knowledge of the defect's existence."  *Quarles*, 997 F. Supp. at 332.

Not only has the plaintiff failed to cite any evidence that the defendant caused the water to be on the floor, she has not shown that the defendant knew there was water on the floor.  The plaintiff and Mr. Berry did not tell store employees that there was water on the floor, that the plaintiff had fallen or that the water had caused her to fall.  (*See* Pl. Dep. Tr. 33:11-20.)  Nor is there any evidence that anyone else reported a hazardous condition of any kind.  Indeed, the defendant's clean sweep records do not reflect any hazards in the general merchandize area. (ECF No. 31-14.)  "[C]ourts applying New York law have rejected allegations of actual notice where defendant has presented evidence that, before the accident, defendant's employees who were responsible for the area were unaware of the alleged condition and had not received complaints about the area."  *Rivera v. Target Dep't Store, Inc.*, No. 15-CV-7846, 2017 WL 2709745, at *5 (S.D.N.Y. June 22, 2017).

---

[10] The plaintiff does not address actual notice in her opposition and thus concedes the defendant's argument on this point.  *Rosenblatt v. City of New York*, No. 05-CV-5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) ("Plaintiff effectively concedes defendants' other arguments . . . by her failure to respond to them[.]").

IV.     **Constructive Notice**

There is no evidence on this record that the water was "visible and apparent," or about how long it was there before the plaintiff fell.  "A defendant has constructive notice if the condition is 'visible and apparent' and 'exist[s] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'"  *Quarles*, 997 F. Supp. at 332 (quoting *Gordon v. Am. Museum of Nat. Hist.*, 492 N.E.2d 774, 775 (1986)).  "This requires the plaintiff to present proof of the length of time the condition existed prior to the alleged fall." *Id.*

The water was not visible or apparent to the plaintiff, who did not see the water until after she fell.  (*See* Def. 56.1 ¶ 18-19.)  Even then, she described it as "like a little small drop" and said that there was "not much water."  (Pl. Dep. Tr. 31:1-7.)  It is well established under New York law that inconspicuous, small collections of water do not qualify as visible and apparent hazards from which constructive notice may be inferred.  *See Gunzburg v. Quality Bldg. Servs. Corp.*, 137 A.D.3d 424, 424 (1st Dep't 2016) ("clear droplets in a small area less than two feet in diameter" not visible or apparent); *Cerkowski v. Price Chopper Operating Co., Inc.*, 68 A.D.3d 1382, 1384 (3d Dep't 2009) (water the size of a pancake which was not observed by store employee during routine inspections was not visible or apparent); *Joseph v. Chase Manhattan Bank*, 277 A.D.2d 96, 96 (1st Dep't 2000) ("The action was properly dismissed absent any evidence as to the size of the puddle on which plaintiff allegedly slipped and how long it was present before the accident."); *Nearchou v. Broadway Mall Props., Inc.*, 270 A.D.2d 468, 469 (2d Dep't 2000) ("small spots of clear water were not visible and apparent"); *Eaton v. Pyramid Co. of Ithaca*, 216 A.D.2d. 823, 824 (3d Dep't 1995) (puddle the size of circle formed by thumb and forefinger insufficient to establish constructive notice).

12

The plaintiff claims, however, that a jury could infer the defendant had constructive notice of the water because "the defect would or should become apparent when the customary inspection and expect[ed] policing of the premises were carried out." (ECF No. 33-1 at 8.) But the defendant's records show that the defendant had no notice at all, either because there was no water, or that the amount was too inconsequential to notice. The cases on which the plaintiff relies are distinguishable because the hazards at issue were different.[11]  *See Valderrama v. N.Y.C. Transit Auth.*, 18 A.D.3d 251, 252 (1st Dep't 2005) ("plaintiff fell into four-square-foot drainage hole"); *Giuffrida v. Metro N. Commuter R. Co.*, 279 A.D.2d 403, 404 (1st Dep't 2001) (plaintiff slipped on "ice cream on top of soda"); *Giambrone v. New York Yankees*, 181 A.D.2d 547, 547 (1st Dep't 1992) ("plaintiff stated she slipped on paper cup and a frankfurter"); *Baker v. Int'l Paper Co.*, 226 A.D.2d 1007, 1008 (3d Dep't 1996) (plaintiff saw "old, rusted material and other debris" around construction site); *Tuthill v. United States*, 270 F. Supp. 2d 395, 399 (S.D.N.Y. 2003) ("Plaintiff claims she saw the ice prior to her fall.").[12]

There is, moreover, no evidence about how long the water was on the floor before the plaintiff fell.  *Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-83, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) ("Thus, in cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant.").  Neither the plaintiff nor Mr. Berry knew precisely when

---

[11] The Second Circuit has observed that when inferring constructive notice in slip-and-fall cases, New York courts draw a distinction between wet or slippery hazards and "outright obstructions or tangible furnishings protruding from the ground."  *Borley v. United States*, 22 F.4th 75, 81 (2d Cir. 2021) (observing that New York courts "have hesitated to find constructive notice" in slip-and-fall fact patterns involving wet surfaces).

[12] The court in *Aligheri v. Long Island R.R.*, 156 F.R.D. 55 (S.D.N.Y. 1994) did not hold that constructive notice can be inferred when a defendant fails to discover a hazard during a routine inspection.  Rather, the court denied summary judgment because there were material factual disputes as to the services a third-party maintenance company agreed to provide.  *Id.* at 59.  The evidence also suggested the defendant had prior notice of a recurring leak on the train platform where the plaintiff fell.  *Id.*

the plaintiff fell.  In her interrogatory responses, the plaintiff said that she fell "between the hours of approximately 10:00 a.m. and 12:00 p.m." (Pl. Interrog. ¶ 1), but said in her deposition that she fell at "around 10:00 a.m."  (Pl. Dep. Tr. 34:23-35-3.)  She also stated that she got to the store at around 9:00 a.m. (*id.* at 23:11-14), and was there for "close to two hours" before she fell. (*Id.* at 24:16-18.)  Mr. Berry testified that he and the plaintiff got to the store around 10:00 a.m. and that the plaintiff fell about 20 minutes later, but ultimately admitted that he did not know when she fell.  (Berry Dep. Tr. 15:8-13)

In any event, there is nothing in the record about how or when the water appeared on the floor; "it remains a mystery how the water ended up where it did," *Dranoff*, 2017 WL 1437207, at *4-5, and neither the record, nor the plaintiff suggest any inferences that can be drawn from the condition of the water at the time of the plaintiff's fall.  *See Gordon*, 492 N.E.2d at 775 (plaintiff did not "describe the paper as being dirty or worn, which would have provided some indication that it had been present for some period of time"); *Quarles*, 997 F. Supp. at 332 (granting summary judgment in favor of defendant in the absence of "telltale signs supporting an inference of a long-standing condition"); *see also Hammond-Warner v. United States*, 797 F. Supp. 207, 211 (E.D.N.Y. 1992) (granting summary judgment in favor of defendant when "plaintiff [did] not know how long the substance on which she allegedly slipped had been on the sidewalk prior to her fall").

Because there is no evidence that the defendant knew about any recurring leaks at the store, there is also nothing to show that the defendant was aware of and failed to address an ongoing, recurring unsafe condition. [13]  (ECF No. 33-1 at 8.)  "[A] plaintiff can establish

---

[13] Even assuming that clean sweep records suggest that Stop & Shop knew about a spill in a different part of the store, that evidence would not be probative as to how long the water had been on the floor where the plaintiff fell.  *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578, at *7 (E.D.N.Y. June 17, 2016) ("This evidence regarding [the defendant's] knowledge of another spill in a

constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." *Bogery v. United States*, No. 17-CV-6996, 2018 WL 4265901, at *3 (S.D.N.Y. Sept. 6, 2018). "However, the New York Court of Appeals has instructed that a defendant's 'general awareness' of a dangerous condition on the premises is not legally sufficient to charge a defendant with constructive notice of the particular condition that caused the plaintiff's injury." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 193 (S.D.N.Y. 2004); *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) ("Under the principles of [New York law], awareness of a general dangerous condition is not enough to charge a defendant with constructive notice of the particular dangerous condition that caused an injury.")

Nothing about Mr. Johnson's testimony changes that conclusion. Mr. Johnson testified that he "could have" seen spills in the area where the plaintiff fell during the two years he worked at Stop & Shop, but did not remember anything specific, or how often it happened. (Johnson Dep. Tr. 77:20-78:5.) Mr. Johnson could only speculate that maybe "one of the waters dropped or one of the sodas had bust open. I can't tell you because I don't remember." (*Id.* 78:10-13.) He did not say anything about a recurring condition like a persistent leak. *See Bernard v. Waldbaum, Inc.*, 232 A.D.2d 596, 597 (2d Dep't 1996) (grocer-defendant's "general awareness that produce may have fallen on the floor" did not establish constructive notice of blueberries that caused plaintiff to fall); *Gloria v. MGM Emerald Enter., Inc.*, 298 A.D.2d 355, 356 (2d Dep't 2002) ("[D]efendant's general awareness that patrons of the bar might spill their drinks on the dance floor . . . does not present a situation where a known defect on the premises

---

different aisle is not relevant to establishing either how long prior to [the plaintiff's] fall the spill in [the aisle where the plaintiff fell] existed or that [the defendant] had constructive notice of that spill.").

is routinely left unattended and causes a recurring hazard.").[14]  In any event, he explained he

cleaned up every spill that he saw, thus negating the plaintiff's theory that a recurring hazardous

condition went unaddressed.  (Johnson Dep. Tr. 78:14-24); *see also Bogery*, 2018 WL 4265901,

at *6 ("Nonetheless, the very procedure that establishes awareness of the recurring condition

negates the other element of this theory—that the condition went routinely or regularly

unaddressed.").

## V.      Accuracy of the Defendant's Inspection Records

Finally, the inspection records do not reflect that there was water on the floor where the

plaintiff fell.  Mr. Johnson did not remember anything about September 24, 2019, the day the

plaintiff fell, but thought that the "Clean Sweep Report" for that day was inaccurate because it

reflected a refrigeration hazard in a part of the store where there were no refrigerators.  (Johnson

Dep. Tr. 69:2-16.)  Because of this testimony, the plaintiff speculates that "there is no way of

knowing whether there was a spill or small puddle of water in the General Merchandise Area of

the store on the date of the occurrence."  (ECF No. 33-1 at 9.)  But, as explained above, the

defendant has no obligation to prove the absence of a hazard or otherwise to absolve itself of

liability.  *Ricci v. Wal-Mart Stores E., LP*, No. 16-CV-6920, 2018 WL 4308556, at *12

(S.D.N.Y. Sept. 10, 2018) ("Because the federal burden of proof applies, Defendant was not

---

[14] The cases on which the plaintiff relies are distinguishable.  *See Kivlan v. Dake Bros. Inc.*, 255 A.D.2d 782, 783 (3d Dep't 1998) (plaintiff established "evidence of recurring oil spills"); *Columbo v. James River, II, Inc.*, 197 A.D.2d 760, 760 (3d Dep't 1993) ("Plaintiff also stated that he observed water on the floor near the fountain on prior occasions and that it was common knowledge among defendants' employees that the fountain was a problem."); *Talavera v. N.Y.C. Transit Auth.*, 41 A.D.3d 135, 135 (1st Dep't 2007) ("Plaintiff further testified that he used the stairs regularly and had seen water on the stairs on many occasions."); *Weisenthal v. Pickman*, 153 A.D.2d 849, 851 (2d Dep't 1989) ("The evidence in the present record would have allowed the jury to infer that the particular dangerous condition at issue, i.e., the litter-strewn stairway, reoccurred with complete regularity at weekly intervals"); *Mazerbo v. Murphy*, 52 A.D.3d 1064, 1066 (3d Dep't 2008) ("Here, plaintiff presented proof demonstrating that defendant had previously received complaints concerning unevenness with respect to the concrete flooring in the approximate area where plaintiff's accident occurred.").

required to produce evidence of the last time the area was inspected or cleaned, but need only

point to Plaintiffs' lack of evidence and inability to raise a genuine issue of material fact on the

elements of their claim."); *Collins v. Walmart Stores E., LP*, No. 19-CV-1691, 2022 WL

2305342 at \*7 (E.D.N.Y. June 17, 2022) ("Plaintiff cannot meet its trial burden under the federal

summary judgment standard merely by pointing to the absence of proof proffered by Defendant

that such an inspection did indeed occur" ).

Thus, summary judgment would be appropriate even if there were no clean sweep

records.  *Lacey v. Target Corp.*, No. 13-CV-4098 RML, 2015 WL 2254968, at \*6 (E.D.N.Y.

May 13, 2015) ("Regardless, even assuming a reasonable inspection had not taken place,

plaintiff has not shown that a reasonable inspection would have discovered the condition, as she

cannot establish the length of time that the condition was there to be discovered.  Accordingly,

[the defendant] has met its burden of showing the absence of a genuine issue of material fact on

this issue."); *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at \*4

(S.D.N.Y. Aug. 7, 2013) (Defendant's "failure to present detailed evidence concerning its

inspections of the premises does not preclude summary judgment, as the initial burden rests with

the plaintiff to raise a triable question of fact that the defendant created or had notice of the

dangerous condition[.]"); *Vasquez*, 2016 WL 315879, at \*12 ("Defendant need not offer any

evidence showing that its cleaning and inspection practices would have revealed the existence of

a dangerous condition, but must only demonstrate that Plaintiff lacks affirmative proof sufficient

to establish a genuine issue of fact with respect to the element of notice.").

**CONCLUSION**

Drawing all inferences in favor of the plaintiff as the non-moving party, there are no triable issues of fact that would permit a jury reasonably to conclude the defendant either created the hazard that caused the plaintiff's accident or that the defendant had actual or constructive notice of the hazard.  These deficiencies are fatal to the plaintiff's negligence claim, which is the sole cause of action in this case.  For these reasons, the defendant's motion for summary judgment is granted and the plaintiff's complaint is dismissed in its entirety.  The Clerk of Court is respectfully directed to enter judgment in favor of the defendant and close the case.


**SO ORDERED.**

s/Ann M. Donnelly
_____

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
         September 14, 2022